Guardianship of L.T.G., S.L.G., and I.J.G. Minors. Clause number 5-11-185. And Mr. Goggin, am I pronouncing that correctly? You may proceed, sir. I've never felt more alone than you. The court called me a couple of weeks ago and asked if I would be presenting an argument in light of the fact that the opposing counsel stood on the record. I thought about it. This is so serious, I better come down and at least try to format this. When you look at it, only the death penalty would be more important than taking someone's kids. And what happened to Moose Green is almost beyond madness. He was married to Natasha Green. She died December 21st of last year. There were funeral arrangements, parties coming up. She had the children, the three children with her at the time. But the evidence, I think, presented and went uncontradicted by Mr. Green was that for at least four or five months before that, he'd been staying weekends in Greenville at her place with the children, doing things that they had done. Buying clothes, picking them out, helping them with their homework. And then at some point, he decides the children are going to move back to his head place in East St. Louis or out. And Natasha's parents will get an order of protection to get the kids first. That's the price Mr. Green has as children. And then by the time the O.P. permit hearing comes around, they file this petition of guardianship. And I guess I would address the constitutional argument first. Let me ask you a question about the constitutional argument. Was it raised in the trial court at any time? No, it was not. It was not raised as a direct argument. Do you think you have a waiver problem there? I don't mind, but if you look at this, Your Honor, she died the 21st when Section 11-7 was still valid. They repealed January 1st of this year, and then they filed a petition, I believe, January 14th, two weeks after it was repealed. We're in a two-year battle, and the constitutional argument just didn't come up per se. We were concentrating on the statute as opposed to counsel. But if you look at it, if you look at the Supreme Court's decision in R.O.S. about this very issue, they said that Section 11-7 protected 11-5B constitutionally because it required fitness, that parents have the right to their children. And by any case, you could say, well, then if you're going to have a custody battle or a guardianship battle, then the petition people trying to establish standing would have to prove the parent is unfit, and that's based on R.O.S. And then the legislature, for whatever reason, repealed that effect in January 1st of this year. So leaving that statute without the protection of 11-7, I would say, deprives the parent of due process, or at least in this case, it does. There was never a finding by the court that Mr. Green was anyway unfit. His fitness was never attacked, so to speak. So our first contention is 11-5B of the Probate Act, without the protection of 11-7, is unconstitutional. Because it doesn't – it puts – it's a level playing field from that point. The petitions are basically the same form. It's just a pecking order, which who's going to prove what decisions first. It doesn't establish that you have to prove unfitness of the parent. Now, setting that argument aside, if we just look at the Probate Act, you know, Paragraphs 8 of B to Section 11-5, the problem that happened here was it was completely unfair. They filed a petition basically alleging two facts that would make Mr. Green incapable of making the proper decisions or carrying them out for the minor children. One was that he had a prior felony from – I think that was 2008, he had the felony – and that he had spent little or no time with the children. And that's what we had shown at the hearing to count, and we were ready for that. And we did that. In fact, if you look at the court's findings, both of those contentions that were alleged, that would have put us on notice of what to fight for, were never incorporated into the court's findings of the judgment. How long was it from the filing of the petition to the trial? The first hearing went on March 9th of 2001. That's the stand-in hearing? Well, I tried to argue that. We'll call it that first. Here's my question. I mean, you say you didn't get adequate notice of what other things they might claim. Did you take any depositions? Did you notice anybody for deposition? Did you file any interrogatories? Did you seek any discovery? We did, Your Honor. When this was filed, one, Mr. Green was a kid. Two, we had a preliminary hearing filed in, I think, in February, early February. We're not sure why we filed an objection to the petition. And the court basically said, and there's no record. It was off the record. But the court said, get your books out. This is the date we're going, March 9th, which is a couple weeks away from that hearing. What I hear you saying is they should have been barred from talking about him living out of the van with the kids or whatever. I remember there was some kind of evidence about that because it wasn't alleged in the petition. Correct. First, did you object on that basis in the trial court? Well, at the end of the hearing, I tried to stress to the court that we got way out of bounds what this hearing was for. Just as an example about the van. At the time that evidence came out, did you make a contemporaneous objection? No, I did not. Okay. I waived several objections about everything. A waiver? Well, I was in a position, Judge, that before the hearing started, I was trying to get it formatted by the court. I was trying to say, are we here standing only? What's the format of this? What's going to come in? And the court just didn't say anything about it. He listened to both sides' arguments and then moved on. And then we had all this. They brought up paternity and the oldest child. And I think if you look at the court on record, as the court goes into its findings, it starts talking about that. I think in a later hearing, when I raised it up for the point of regarding an item, the court kind of backed away from that. But clearly, at the end of the first day of the hearing, he went into that. He started talking about we're dealing with at least two of the children because they brought up this issue of paternity. And my contention, my arguments before the final findings of the court was that this hearing got completely out of bounds. We were there for two simple questions. One, his prior felony and what effect that has on his ability to raise his children. And two, whether or not he spent adequate time with his children since 2008. I think the evidence is clear. He spent ample time with his kids from 2008 to the time they fell off until they were a protectionary. And that wasn't contradictory. And so I think the way, I think the first hearing, Your Honors, was basically an adulterated hearing of both the staining issues and the fitness issues. And this court touched on that in AGG but found the reason that it wasn't important in that case to have to decide that. But I think this is a prime case where there needs to be a distinct, especially when it's raised before the hearing starts. We raised it. We said, look, we're here for staining only. These are the two factual issues for a point. And it just went berserk. And then moving on to the court's findings, almost all of the points of findings by the judge, in my opinion, are more related to best interest rather than staining. But if you go back one point by point of its findings, it's not supported by a verdict. But keep in mind, there's a presumption under 11.5B that a parent can make those decisions and carry them out. There's a presumption. So the burden of that hearing is on the petitioner to try to establish that he cannot. And the court referenced things like the respondent says he gave $700 a year but there's nothing in the record to support that. Well, that problem rests with the petitioner. That was their job. And they never got into his income. The judge used that as part of his finding. They never got in. That was their duty to say, hey, he was unemployed, he didn't earn income. It's not on the record because the petitioner didn't do it. Likewise, when the judge says the petitioner says he did these things, cooking and so forth for the children, that there's nothing on the record, or I think it says the record is contrary. Well, if you look at the record, he testified to it. He did all this stuff. In close proximity to their death, four or five months before, he was coming in for three nights on the weekend, leaving Monday morning for work. He would take them out shopping, out to eat, to movies, buy clothing, help them with their homework. He was in school at the time, too, so they were ‑‑ I guess he called himself a role model for school. But that went unpunished. No other witness said that didn't happen. So I think if you look at the record and the trial court's findings, it's just they're not substantial, almost none of them. And so I think under this case, for whatever reason, the trial court just got wrong. And the severity of it is this guy lost his kids. He was married to Natasha when she died. I think there's evidence there were problems, but they were living in two different households except the weekends when they cohabitated. And I want to point out, too, on the issue of the minivan, the court made that in its findings. Well, you have to keep in mind when that happened, the mother was in the minivan, too. So it's not like he took the kids away from her and they had this poor condition, which the petitioner never established a duration. It could have been a day, it could have been two days, it could have been two weeks. But the petitioner never established that. But in any event, the mother was with him, too, so he's making these decisions with the mother about the children. And I don't think that's an issue. Poverty, living conditions, but there was never any evidence that they jeopardized the children in any way, if he deprived them. In fact, he was trying to keep them in private school, and that's not how he did that. So I think the constitutional issue needs to be addressed. I think there's a lot of attorneys and finance kind of stuff going on in counties all over, in the district, where you have a parent die and a grandparent throw them out, put them in the uphill battle and fight these type of issues. And I think with the repeal of 11-7, I think something needs to be addressed. What's the meaning of 11-5B without 11-7? But in any event, I think it was inherently unfair the way we showed up to the hearing with two points of facts that were raised, and the whole kitchen came down. So we'd ask that the court look at the record. Don't rule her out of court. We would prefer that the federal court take control of the issue and rule in Lewis Green's favor. Thank you, Mr. Goggin. We'll take this matter under advisement and issue our decision in due course. Thank you. We'll be in recess until 1 p.m.